UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
DEE FARMER,

                         Plaintiff,

                                              Civil Action No.
          v.                                  CV 13-1255

FEDERAL BUREAU OF PRISONS and                 (Irizarry, J.)
FRANK STRADA,                                 (Pollak, M.J.)

                         Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S RENEWED COMPLAINT, AS WELL AS
<u>PARTIAL MOTION TO DISMISS FOR IMPROPER VENUE OR TRANSFER</u>**


                              LORETTA E. LYNCH
                              United States Attorney
                              Attorney for Defendant
                              Eastern District of New York
                              271 Cadman Plaza East
                              Brooklyn, New York 11201


KELLY HORAN FLORIO
Assistant United States Attorney
(Of Counsel)

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY......................................2
   A    Plaintiff's Incarceration at MDC and Commencement of This Action.................2
   B.   Plaintiff Voluntarily Dismisses His Complaint............................................3
   C.   Plaintiff's Time at MDC from November 27, 2013 through March 11, 2014......4
   D.   Plaintiff's Incarceration at FCI Gilmer and Renewed Complaint....................4

STANDARDS FOR MOTION TO DISMISS..................................................6
   A.   Rule 12(b)(1)............................................................................6
   B.   Rule 12(b)(6)............................................................................6

ARGUMENT...................................................................................8

POINT I:  PLAINTIFF'S BIVENS-TYPECLAIMS AGAINST
THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL
CAPACITIES ARE BARRED BY SOVEREIGN IMMUNITY............................8

POINT II: PLAINITFF'S ADA CLAIMS SHOULD BE
DISMISSED BECAUSE THIS COURT LACKS
JURISDICTION OVER THEM ...............................................................9

POINT III: ANY CLAIMS PLAINTIFF MAY BE
ASSERTING AGAINST THE INDIVIDUAL
DEFENDANTS UNDER SECTION 504 OF THE
REHABILITATION ACT OF 1973 MUST BE DISMISSED...........................10

POINT IV: ANY CLAIMS PLAINTIFF MAY BE
ASSERTING AGAINST MDC UNDER SECTION 504
OF THE REHABILITATION ACT OF 1973
 MUST BE DISMISSED BECAUSE THEY ARE MOOT................................11

POINT V: THIS COURT SHOULD DISMISS PLAINTIFF'S
CLAIMS REGARDING HIS CONFINEMENT AT FCI GILMER
FOR IMPROPER VENUE OR, ALTERNATIVELY, TRANSFER
THOSE CLAIMS TO THE NORTHERN DISTRICT OF WEST VIRGINIA........12
   A.   The Standard for Dismissal or Transfer.............................................13
   B.   Plaintiff Cannot Establish Venue In This District...................................14

C.      The Court Should Dismiss Plaintiff's
FCI Gilmer Claims For Improper Venue…………………………………...15

D.      If the Court Does Not Dismiss Plaintiff's Claims Regarding FCI Gilmer,
It Should Transfer Them to the Northern District of West Virginia……………..16

**CONCLUSION**……………………………………………………………………18

## PRELIMINARY STATEMENT

Plaintiff pro se Dee Farmer, a former inmate at the Metropolitan Detention Center in Brooklyn, New York ("MDC"), who is currently incarcerated at the Federal Correction Institute in Gilmer, West Virginia (" FCI Gilmer"), brings this action against the Federal Bureau of Prisons ("BOP"), the MDC Warden, the FCI Gilmer Warden, the BOP Regional Director for the Northeast Region ("Regional Director"), and the BOP National Appeals Director ("National Appeals Director") pursuant to Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971) ("Bivens"), and the Americans with Disabilities Act ("ADA").[1]  Plaintiff claims that defendants discriminated against him on the basis of his alleged disabilities by failing to provide him with appropriate accommodations to permit him to access certain programs and services available to seeing inmates.

As set forth below, defendants are entitled to dismissal pursuant to Federal Rule of Civil Procedure 12 with respect to all of plaintiff's claims.  First, this Court lacks jurisdiction to consider plaintiff's claims under Bivens because plaintiff allegations against the individual defendants relate to actions taken in their official capacities, and also under the ADA because the ADA does not apply to the federal government.  Second, even if this Court could liberally construe plaintiff's Renewed Complaint as alleging claims seeking injunctive relief under the Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"), his claims relating to his confinement at MDC are moot because he is no longer incarcerated there.  With respect to plaintiff's remaining claims about his confinement at FCI Gilmer, this Court should dismiss those claims pursuant to Federal Rule of Civil Procedure 12(b)(3) for improper venue.

---

[1]  The May 21, 2014 Affidavit accompanying plaintiff's Renewed Complaint ("May 21 Affidavit") also indicates, without more, that plaintiff brings claims alleging Constitutional violations.  See Docket Entry 35 at ¶ 4.  Liberally construed, it appears that plaintiff's alleged Constitutional violations are tied to his Bivens-type Constitutional tort claims.

These claims should be dismissed outright because the Court lacks subject matter jurisdiction over certain claims and because plaintiff failed to exhaust his administrative remedies with respect to any claims relating to his confinement at FCI Gilmer.  If, however, the Court determines not to dismiss plaintiff's claims regarding FCI Gilmer, it should transfer them to the only proper venue, the United States District Court for the Northern District of West Virginia, because that is the district in which all of the events relating to plaintiff's claims against FCI Gilmer occurred and it is the district in which the documents, witnesses and any other evidence relating to those claims are located.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

A.    Plaintiff's Incarceration at MDC and Commencement of this Action

On June 19, 2012, plaintiff arrived at MDC as a pre-trial inmate.  See August 15, 2014 Declaration of Kenneth Bork ("Bork Dec.") at ¶ 5.  Prior to incarceration, he resided in Baltimore, Maryland.  See id. at ¶ 4.  Plaintiff has a visual impairment that he asserts impacts his ability to read and function independently in a prison setting.  See Docket Entry 35 at ¶ 5; see also May 29, 2013 letter from plaintiff to the Honorable Dora L. Irizarry at Docket Entry 16.

On January 8, 2013, plaintiff filed the instant action alleging disability discrimination claims under the ADA against BOP and MDC Brooklyn Warden Frank Strada.  See generally Complaint at Docket Entry 1.  Specifically, plaintiff alleged that defendants BOP and Strada had not provided plaintiff with reasonable accommodations to enable him to access certain programs and services available to inmates without visual impairments.  See id.; see also Docket Entry 16. He also alleged that he could not exhaust his administrative remedies prior to filing the instant action as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA") because

his visual impairment prevented him from completing the administrative remedy forms.  See Docket Entry 1 at ¶ 4.

On September 12, 2013, plaintiff pleaded guilty to one count of Conspiracy to Commit Mail Fraud, 18 USC § 1349, one count of Conspiracy to Forge Judicial Signature and Unlawfully Obtain Customer Information from a Financial Institution, 18 USC § 371, and three counts of Aggravated Identity Theft, 18 USC § 1028 A.  See U.S.A. v. Farmer, et al., 12-cr-0758 (S.D.N.Y.) (Nathan, J.) at September 12, 2013 Electronic Docket Entries.[2]

B.    Plaintiff Voluntarily Dismisses His Complaint

On September 25, October 30, and November 21, 2013, the parties appeared before this Court to determine whether this action could be resolved without further litigation.  See Docket Entries 28, 30, and 32.  During the course of these conferences, the parties agreed that MDC staff would assist plaintiff in completing any necessary administrative remedy request forms so that plaintiff could pursue his administrative remedies with respect to the alleged conditions at MDC that formed the basis of his claims.  See Docket Entry 35 at ¶¶ 8, 10.

On or about October 25, 2013 and November 7, 2013, with the help of MDC staff, plaintiff submitted administrative remedy requests to MDC seeking certain accommodations that he stated were necessary for him to have access to various MDC programs and activities.  See Docket Entry 35 at Exhibit B, pp. 4-34.  At the November 21, 2013 conference, plaintiff acknowledged that MDC had provided him with appropriate accommodations.  See Docket Entry 32.  These accommodations included assistance from plaintiff's MDC Unit Team staff upon request.  See Bork Dec. at ¶ 7.  At that same conference, plaintiff agreed to dismiss his claims without prejudice.  See Docket Entry 32.

---

[2]   On January 28, 2014, the United States District Court for the Southern District of New York sentenced plaintiff to 72 months of incarceration followed by three years of supervised release. See U.S.A. v. Farmer, et al., 12-cr-0758 (S.D.N.Y.) (Nathan, J.) at Docket Entry 80.

On November 25, 2013, the parties filed a Stipulation of Dismissal, and the Court

dismissed this action without prejudice on November 26, 2013.  See Docket Entry 33 and

November 26, 2013 Electronic Order.

      C.    Plaintiff's Time at MDC from November 27, 2013 through March 11, 2014

Subsequent to the voluntary dismissal and despite his November 21, 2013

acknowledgement that he had received appropriate accommodations, plaintiff, with the help of

MDC staff, submitted administrative remedy request forms presenting similar claims about his

lack of access to certain programs and services and complaints about the conditions of his

confinement at MDC.  See Docket Entry 35 at ¶ 10, Exhibit B pp. 4-34[3]  MDC staff assisted

plaintiff in submitting the necessary forms at each level of the administrative review process.

See Docket Entry 35 at ¶ ¶ 9-11.  On March 11, 2014, plaintiff was transferred out of MDC.  See

Bork Dec. at ¶ 8

      D.    Plaintiff's Incarceration at FCI Gilmer and Renewed Complaint

On March 25, 2014, plaintiff's transfer was complete and he arrived at his current place

of incarceration, FCI Gilmer, in Glenville, West Virginia.  See id.; see also Docket Entry 35 at ¶

12. On June 11, 2014, plaintiff filed a Renewed Complaint in this case, alleging claims under

the ADA, Bivens, and the United States Constitution against BOP, the MDC Warden, the FCI

---

[3]  It appears that plaintiff also filed an administrative claim seeking monetary damages for
personal injuries pursuant to the Federal Tort Claims Act, 42 U.S.C. § 2679 et al. ("FTCA") on
or about November 30, 2013, which BOP denied on December 31, 2013.  See Declaration of
Assistant United States Attorney Kelly Horan Florio at Exhibit A.  That administrative claim
essentially reasserted plaintiff's disability discrimination claims against MDC, but did not allege
any tortious conduct or personal injuries for which he is seeking compensatory damages.  See id.
Accordingly, it appears that plaintiff's administrative claim sought punitive damages only, which
the FTCA specifically prohibits in claims against the United States.  See 28 U.S.C. § 2674.
Although plaintiff attached a portion of his FTCA administrative claim to his May 21 Affidavit,
he does not allege FTCA claims in his Renewed Complaint.  Accordingly, his administrative
FTCA allegations will not be addressed further here.

Gilmer Warden, the BOP Regional Director for the Northeast Region ("Regional Director"), and

the BOP National Appeals Director ("National Appeals Director"). See Renewed Complaint at

Docket Entry 36; see also Docket Entry 35 at ¶ 4.  In his Renewed Complaint and corresponding

May 21 Affidavit, plaintiff alleges that MDC staff were not "reasonably available" to assist him

during his incarceration at MDC. See Docket Entry 35 at ¶ 12.  He further alleges that he

informed the MDC Warden, the Regional Director, and the National Appeals Director of this

issue during the administrative remedy process.  See id.  Finally, plaintiff alleges that he is

currently unable to access certain programs and activities, including certain daily living

activities, at FCI Gilmer.  See Docket Entry 36 at ¶ 4, see also Docket Entry 35 at ¶¶13-15).[4]

Plaintiff's Renewed Complaint seeks injunctive relief and monetary damages.  See Docket Entry

35 at p. 5, ¶ V.

      Plaintiff's Renewed Complaint, read together with the May 21, 2014 Affidavit, alleges

that he exhausted his administrative remedies with respect to his claims concerning his

conditions of confinement at MDC.  See id. at p. 2, ¶ II; see also Docket Entry 35 at ¶ 11.

However, plaintiff has not alleged that he pursued the formal administrative remedy process

regarding the conditions of his confinement at FCI Gilmer.  See generally Docket Entries 35-36..

He also does not allege that he cannot pursue the administrative remedy process while at FCI

Gilmer.  See id.

---

[4] In both his May 21 Affidavit and June 25, 2014 Affidavit in Support of Motion for Preliminary
Injunction, plaintiff also expresses concern as to how FCI Gilmer will provide him with
assistance after the August 4, 2014 release of his designated inmate helper.  See Docket Entries
35, 40.  On July 17, 2014, this Court Ordered defendants to provide a separate report on August
15, 2014 to the Court indicating what procedures FCI Gilmer has adopted to ensure that plaintiff
receives his medications.   Accordingly, that issue will not be addressed in this Memorandum.

## STANDARDS FOR MOTION TO DISMISS

A.      Rule 12 (b)(1)

A claim is properly dismissed under Federal Rule of Civil Procedure 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); see also Fed. R. Civ. P. 12(b)(1). "When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff." See Sweet v. Sheahan, 235 F.3d 80, 83 (2d Cir. 2000) (citations omitted). In determining whether subject-matter jurisdiction exists, a district court may consider evidence outside the pleadings. Arar v. Ashcroft, 532 F.3d 157, 168 (2d Cir. 2008).

B.      Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), the court must "accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008) (citation omitted). Nevertheless, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This "plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citation and internal quotations omitted).

The Supreme Court in Iqbal summarized the "[t]wo working principles [that] underlie" Twombly: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. "Second, only a complaint that states a

plausible claim for relief survives a motion to dismiss." Id. at 679.  Applying this second

principle "will . . . be a context-specific task that requires the reviewing court to draw on its

judicial experience and common sense." Id.  Thus, the Supreme Court set out a "two-pronged"

approach for courts deciding a motion to dismiss:

> [A] court considering a motion to dismiss can choose to begin by identifying
> pleadings that, because they are no more than conclusions, are not entitled to the
> assumption of truth . . . .  When there are well-pleaded factual allegations, a court
> should assume their veracity and then determine whether they plausibly give rise
> to an entitlement to relief.

Id.

Since Twombly, the Second Circuit has confirmed that "[t]o survive dismissal, the

plaintiff must provide the grounds upon which his claim rests through factual allegations

sufficient 'to raise a right to relief above the speculative level.'"  ATSI Communications, Inc. v.

Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (emphasis added) (quoting Twombly, 550 U.S.

544, 555 (2007)).   "[C]onclusory allegations or legal conclusions masquerading as factual

conclusions will not suffice to prevent a motion to dismiss." Nwaokocha v. Sadowski, 369 F.

Supp. 2d 362, 366 (E.D.N.Y. 2005) (quoting Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d

236, 240 (2d Cir. 2002)). See also Mohammad v. VA Rooming House, No. CV-07-3796 (JG)

(LB), 2008 U.S. Dist. LEXIS 11734, at *5-15 (E.D.N.Y. Feb. 15, 2008) (citing Twombly and

Iqbal and granting defendants' motions to dismiss).

**ARGUMENT**

**POINT I**

**PLAINTIFF'S <u>BIVENS</u>-TYPE CLAIMS AGAINST
THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL
<u>CAPACITIES ARE BARRED BY SOVEREIGN IMMUNITY</u>**

Plaintiff's Renewed Complaint alleges claims against the Wardens of both MDC and FCI Gilmer, the BOP Northeast Regional Director, and the National Appeals Director using only their official job title. Plaintiff's allegations concerning these individuals relate solely to their official roles and actions that these individuals only could have taken in their official capacities. Thus, even the most liberal construction of the Renewed Complaint mandates a finding that plaintiff only sued these individuals in their official capacities.

Claims of violations under <u>Bivens</u>, against federal employees in their official capacities, however, must be dismissed because sovereign immunity protects them from such suits. "It is well-settled that any lawsuit against an agent or employee of the United States in his/her official capacity is an action against the sovereign itself." <u>Perez v. Hawk</u>, 302 F. Supp. 2d 9, 18 (E.D.N.Y. 2004) (citing <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985)); <u>see also</u> <u>Federal Deposit Ins. Corp. v. Meyer</u>, 510 U.S. 471, 478 (1994) (same). However, the United States enjoys sovereign immunity from suit except to the extent to which, and under the terms of which, it consents to be sued. <u>See</u> <u>De Tineo v. United States</u>, 137 F.3d 715, 719 (2d Cir. 1998) (citing <u>United States v. Sherwood</u>, 312 U.S. 584, 586 (1941)). "[T]he terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." <u>Id.</u> (quoting <u>Sherwood</u>, <u>supra</u>); <u>see also</u> <u>Meyer</u>, 510 U.S. at 475 (same). Furthermore, the waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." <u>United States v. Mitchell</u>, 445 U.S. 535, 538

(1980) (quoting <u>U.S. v. King</u>, 395 U.S. 1, 4 (1969)).  Without such waiver, "sovereign immunity shields the Federal Government and its agencies from suit." <u>Meyer</u>, 510 U.S. at 475.

The United States has not waived sovereign immunity with respect to <u>Bivens</u>-type Constitutional tort claims against the United States, its agencies, or federal employees sued, as here, in their official capacities. <u>See</u>, <u>e.g.</u>, <u>Castro v. United States</u>, 34 F.3d 106, 110 (2d Cir. 1994).  Likewise, <u>Bivens</u> does not authorize suits against the United States, its agencies, or federal employees sued in their official capacities. <u>See</u>, <u>e.g.</u>, <u>Meyer</u>, 510 U.S. at 485; <u>Robinson v. Overseas Military Sales Corp.</u>, 21 F.3d 502, 510 (2d Cir. 1994); <u>Keene Corp. v. United States</u>, 700 F.2d 836, 845 n.13 (2d Cir. 1983); <u>see also</u> <u>Perez</u>, 302 F. Supp. 2d at 18 ("<u>Bivens</u> only authorizes suits for monetary damages against federal officials sued in their individual capacity").  Consequently, because plaintiff's <u>Bivens</u>-type claims are being asserted against the MDC and FCI Gilmer Wardens, the BOP Northeast Regional Director, and the National Appeals Director in <u>only</u> their official capacities based on actions that they only could have taken in their official capacities, then those claims must be dismissed.

## POINT II

### PLAINITFF'S ADA CLAIMS SHOULD BE DISMISSED <u>BECAUSE THIS COURT LACKS JURISDICTION OVER THEM</u>

The claims in plaintiff's Renewed Complaint stem from his assertions that the staff at both MDC and FCI Gilmer have discriminated against him on the basis of his alleged disability in violation of the ADA by failing to provide him with reasonable accommodations to permit him to access programs and services available to seeing inmates at those facilities.  These claims must fail, however, because this Court lacks subject matter jurisdiction over them.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the

9

services, programs, or activities of a public entity, or be subjected to discrimination by any such

entity." See 42 U.S.C. §12132.  However, the term "public entity" in the ADA applies only to

state and local government agencies, not federal agencies.  See 42 U.S.C. §12131(1); see also

Cellular Phone Taskforce v. FCC, 217 F.3d 42, 73 (2d Cir. 2000) ("Title II of the ADA is not

applicable to the federal government"); Sarvis v. United States, 99-0318, 2000 U.S. App. LEXIS

26618, *5-6 (2d Cir. Oct. 19, 2000) (dismissing inmate's ADA claims against BOP because BOP

did not qualify as a "public entity" as defined by the ADA).  Accordingly, this Court lacks

subject matter jurisdiction with respect to plaintiff's ADA claims and those claims should be

dismissed.

### POINT III

**ANY CLAIMS PLAINTIFF MAY BE ASSERTING AGAINST
THE INDIVIDUAL DEFENDANTS UNDER SECTION
504 OF THE REHABILITATION ACT OF 1973 MUST BE DISMISSED**

Unlike the ADA, Section 504 provides for relief against the federal government relating

to claims of disability discrimination.  See 29 U.S.C. § 794(a) ("no otherwise qualified individual

with a disability in the United States, as defined in [29 USCS § 705(20)], shall, solely by reason

of her or his disability, be excluded from the participation in, be denied the benefits of, or be

subjected to discrimination under any program or activity receiving Federal financial assistance

or under any program or activity conducted by any Executive agency or by the United States

Postal Service").  Construed liberally, therefore, plaintiff's allegations that MDC and FCI Gilmer

have denied him access to certain programs and services available to seeing inmates assert

disability discrimination claims under Section 504.  However, Section 504 claims cannot lie

against individual defendants named, as here, in their official capacities.  See B.D.S. v. Southold

Union Free Sch. Dist., 08-CV-1319 (SJF) (WDW), 2009 U.S. Dist. LEXIS 55981, *64-65

(E.D.N.Y. June 24, 2009) (dismissing Section 504 claims against individual defendants in both official and individual capacities); see also Rekowicz v. Sachem Cent. Sch. Dist., 11-CV-1561 (JS)(ETB), 2012 U.S. Dist. LEXIS 133311, *6 (E.D.N.Y. Sept. 17, 2012) (denying plaintiff's proposed amendment to add individual defendants and assert Section 504 claims against them). Moreover, even if plaintiff's claims could be construed as potentially actionable under Section 504, he cannot seek monetary damages because the federal government has not waived sovereign immunity with respect to claims for monetary relief under Section 504. See Lane v. Pena, 518 U.S. 187 (1996) (holding that Congress has not waived sovereign immunity under Section 504 for awards of monetary damages against the federal government).[5] Accordingly, even if the Court construes plaintiff's claims under the Rehabilitation Act, those claims cannot stand as to the named individual defendants and, even if they could, can seek only injunctive relief.

### POINT IV

**ANY CLAIMS PLAINTIFF MAY BE ASSERTING AGAINST MDC UNDER SECTION 504 OF THE REHABILITATION ACT OF 1973 MUST BE DISMISSED BECAUSE THEY ARE MOOT**

When a plaintiff lacks a legally cognizable interest in the outcome of an action, the case is moot and the Court lacks subject-matter jurisdiction under Article III of the Constitution. See U.S. Const. art. III, § 2, cl. 1; Fox v. Board of Trustees of the State Univ. of New York, 42 F.3d 135, 141 (2d Cir. 1994) (when a case becomes moot, federal courts lack subject matter jurisdiction over the action). Indeed, federal courts are precluded from "decid[ing] a case on the

---

[5] Although monetary damages may be available in the limited instances where the claims are related to the funding activities of federal providers (see Lane, 518 U.S. at 193), plaintiff has not and cannot allege that MDC and FCI Gilmer were acting in the capacity of federal funding providers with respect to the terms of his incarceration. See, e.g. Sarvis v. United States, 99-0318, 2000 U.S. App. LEXIS 26618, *8 (2d Cir. Oct. 19, 2000) (dismissing inmate plaintiff's Section 504 claims seeking monetary damages where he was denied entry into a prison program because federal prison was not acting as a federal provider of financial assistance).

merits before resolving whether the court has Article III jurisdiction." United States v. Miller,

263 F.3d 1, 4 n. 2 (2d Cir. 2001).

Plaintiff's claims for injunctive relief concerning his access to programs and services at

MDC are moot because he transferred out of MDC on March 11, 2014.  See Prins v. Coughlin,

76 F.3d 504, 506 (2d Cir. 1996) ("[i]t is settled in this Circuit that a transfer from a prison facility

moots an action for injunctive relief against the transferring facility"); see also Rosenberg v.

Meese, 622 F. Supp. 1451, 1461 (S.D.N.Y. 1985) (prisoner's complaint regarding short-term

facility mooted by transfer to long-term facility); Abernathy v. Strada, 12-CV-6073 (DLI)

(VVP), 2013 U.S. Dist. LEXIS 60891, (E.D.N.Y. April 29, 2013) (finding inmate plaintiff's

claims for injunctive relief in the form of a religious accommodation moot because he had

transferred out of MDC).  Because plaintiff no longer resides at MDC, he cannot benefit from

any injunctive relief provided by MDC and he longer has a legally cognizable interest in the

outcome of his claims regarding MDC programs and services.  See Fox, 42 F.3d at 141.  In other

words, "there is no issue of practical importance for the court to adjudicate" as to plaintiffs

complaints about his conditions of confinement at MDC.  See ABN Amro Verzekeringen BV v.

Geologistics Americas, Inc., 485 F.3d 85, 94 (2d Cir. 2007).  As such, plaintiff's claims relating

to his experiences at MDC should be dismissed because they are moot and the Court lacks

subject matter jurisdiction to consider them.

## POINT V

### THIS COURT SHOULD DISMISS PLAINTIFF'S CLAIMS
### REGARDING HIS CONFINEMENT AT FCI GILMER
### FOR IMPROPER VENUE OR, ALTERNATIVELY, TRANSFER
### THOSE CLAIMS TO THE NORTHERN DISTRICT OF WEST VIRGINIA

As discussed supra, the Court should dismiss all of plaintiff's claims relating to his

confinement at MDC Brooklyn for lack of subject matter jurisdiction.  This would include any

purported Bivens-type or Section 504 claims involving BOP, the MDC Warden, the BOP

Northeast Regional Director, and the National Appeals Director.[6]  If this Court dismisses

plaintiff's claims against MDC, then plaintiff's only remaining claims would be those he has

alleged against BOP and/or the FCI Gilmer Warden relating to plaintiff's confinement at FCI

Gilmer.  As noted supra at pages 8 through 11, plaintiff's claims against the FCI Gilmer Warden

also warrant dismissal because plaintiff cannot allege Bivens-type claims against the FCI Gilmer

Warden in his official capacity and cannot allege Section 504 claims against individual

defendants.  Even if the Court did have jurisdiction to consider those claims, however, venue for

any of plaintiff's Bivens-type or Section 504 claims about his confinement at FCI Gilmer does

not lie in the Eastern District of New York.  The Court should dismiss those claims or, in the

alternative, transfer them to the Northern District of West Virginia.

A.   The Standard for Dismissal or Transfer

"Plaintiff bears the burden of establishing that venue is properly laid in the district in

which the complaint was filed."  See Pardy v. Gray, No. 06-CV-6801 (JBW), 2007 U.S. Dist.

LEXIS 45428, *4 (E.D.N.Y. Jun. 21, 2007) (citation and internal quotations omitted) (finding

that this district was not proper venue for plaintiff's claims and transferring the case to the

United States District Court for the Southern District of New York).

When reviewing motions under Fed. R. Civ. P. 12(b)(3), courts must accept as true the

allegations in the complaint, and construe reasonable inferences in plaintiff's favor.  See Spriggs

v. Brownlee, No. 04 CV 0644, 2006 U.S. Dist. LEXIS 31340 ,* 18 (N.D.N.Y. May 9, 2006)

---

[6]   Plaintiff's Renewed Complaint, read together with his May 21 Affidavit alleges that he
pursued administrative remedies only relating to his claims about his incarceration at MDC.  See
generally Docket Entries 35-36.  Further, plaintiff's allegations against the BOP Northeast
Regional Director and National Appeals Director relate to their involvement in that
administrative remedy process.  Accordingly, those two defendants have no relation to plaintiff's
claims about his incarceration at FCI Gilmer.

(citation omitted).  Courts may also consider materials outside the pleadings.  See id., 2006 U.S.

Dist. LEXIS 31340 at *18-19 (citations omitted).  Should plaintiff fail to satisfy his burden, the

court retains discretion whether to dismiss the case or to transfer the case to any district where

the case could initially have been brought.  See Pardy, 2007 U.S. Dist. LEXIS 45428, at *5

(citing Minnette v. Time Warner, 997 F.2d 1023, 1026 (2d Cir. 1996).

  B.  Plaintiff Cannot Establish Proper Venue In This District

  Pursuant to 28 U.S.C. § 1391, the statute governing venue in civil actions, an action may

be brought:  "(1)  a judicial district in which any defendant resides, if all defendants are residents

of the State in which the district is located; (2) a judicial district in which a substantial part of the

events or omissions giving rise to the claim occurred, or a substantial part of property that is the

subject of the action is situated; or (3) if there is no district in which an action may otherwise be

brought as provided in this section, any judicial district in which any defendant is subject to the

court's personal jurisdiction with respect to such action."   See 28 U.S.C. § 1391(b).

  With respect to civil actions where, as here, a named defendant is a federal employee

acting in his official capacity, the venue provision similarly notes that venue is proper where:

"[1] a defendant in the action resides, [2] a substantial part of the events or omissions giving rise

to the claim occurred, or a substantial part of property that is the subject of the action is situated,

or [3] the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e).  In

this case, the FCI Gilmer Warden does not both reside in New York.[7]  Moreover, none of the

events occurred in the Eastern District of New York and plaintiff himself does not reside in this

---

[7]  Because the FCI Gilmer Warden maintains his official office at FCI Gilmer in the Northern
District of West Virginia, to "reside" there for the purpose of determining venue.  See Hartke v.
Federal Aviation Administration, 369 F. Supp. 741, 746 (E.D.N.Y. 1976) ("[t]he residence of a
public official sued in his official capacity is his official residence; that is, the place where his
office is maintained").

district.[8]  Accordingly, venue does not lie in the Eastern District of New York.  Instead, proper

venue for plaintiff's remaining claims lies in the Northern District of West Virginia, where the

FCI Gilmer Warden resides and where the events in question allegedly occurred.[9]  See Hartke v.

Federal Aviation Administration, 369 F. Supp. 741, 746 (E.D.N.Y. 1976) (holding that venue

was improper in this district, but proper in the District of Columbia where defendant FAA

employee officially resided).

      C.    The Court Should Dismiss Plaintiff's FCI Gilmer Claims For Improper Venue

     Where a plaintiff, as here, has filed an action in an improper venue, "[t]he district court of

a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if

it be in the interest of justice, transfer such case to any district or division in which it could have

been brought."  28 U.S.C. § 1406.  Dismissal is particularly appropriate in cases where a brief

look at the merits of the case indicates that the case is "a sure loser" and transfer would simply

be a waste of judicial resources.  Daniel v. American Bd. of Emergency Medicine, 428 F.3d 408,

436 (S.D.N.Y. 2005) (dismissing all of plaintiff's claims where transfer would not be in the

interests of justice because plaintiff lacked standing) (citation and internal quotations omitted).

As discussed supra, plaintiff's Bivens-type and Section 504 claims against the FCI Gilmer

---

[8]  Plaintiff actually "resides" at his pre-incarceration address in Baltimore, Maryland for the
purpose of considering venue here.  See Billiteri v. United States Board of Parole, 541 F.2d 938,
946 (2d Cir. 1976) (finding venue proper based on inmate's pre-incarceration residence, and
disregarding location where plaintiff was presently incarcerated); see also McCune v. United
States, 374 F. Supp. 946, 948 (S.D.N.Y. 1974) (dismissing inmates claim for lack of venue
because, among other things, his pre-incarceration address lay outside the boundaries of
Southern District of New York).

[9]  Although plaintiff's residence in Maryland may establish venue there for the purpose of his
claims against the FCI Gilmer Warden under 28 U.S.C. §1391(e), it would not be relevant to
establish venue for his claims against BOP under 28 U.S.C. §1391(e).  As such, the Northern
District of West Virginia is the only proper venue for all of plaintiff's claims relating to his
incarceration at FCI Gilmer.

Warden merit dismissal because he cannot be sued in his official capacity under <u>Bivens</u> and because he cannot be sued individually under Section 504.

Plaintiff's Section 504 claims relating to his confinement at FCI Gilmer in West Virginia also merit dismissal because plaintiff has failed to exhaust his administrative remedies with respect to any aspect of his confinement at FCI Gilmer.  According to the PLRA, "no action shall be brought with respect to prison conditions under section 1983 of this title or, any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  <u>See</u> 42 U.S.C. § 1997e(a).  Although plaintiff is aware of the process for administrative exhaustion under the PLRA and acknowledges that administrative exhaustion is a prerequisite to his claims here (<u>see</u> Docket Entry 35 at ¶¶ 7-9), he has not filed a single administrative remedy request form (BP-9, BP-10, or BP-11) relating to his conditions of confinement at FCI Gilmer.  <u>See</u> <u>generally</u> Docket Entry 35; <u>see</u> <u>also</u> Bork Dec. at ¶ 21.  Accordingly, it is undisputed that he failed to exhaust his administrative remedies with respect to those claims and they should be dismissed.[10]

As such, none of plaintiff's claims relating to his confinement at FCI Gilmer can succeed and the Court should dismiss them for the sake of judicial economy instead of transferring them.

> D.      If the Court Does Not Dismiss Plaintiff's Claims Regarding FCI Gilmer,
>         <u>It Should Transfer Them to the Northern District of West Virginia</u>

If the Court does not dismiss plaintiff's claims relating to his confinement at FCI Gilmer, then this Court should transfer those claims to the Northern District of West Virginia.  As demonstrated above, the only proper venue for plaintiff's claims regarding his confinement at

---

[10]  Because defendants are seeking dismissal of plaintiff's claims for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3), the argument  that plaintiff failed to exhaust his administrative remedies is set forth as grounds for dismissal as opposed to summary judgment. Should the Court wish to consider this argument as part of a motion for summary judgment, defendants will provide any additional information the Court may require.

FCI Gilmer is the Northern District of West Virginia.  In situations where proper venue lies in

the proposed transferee district, the Court should consider the following factors in determining

whether to transfer the case in the interest of justice and for the parties' convenience "(1)

convenience of witnesses; (2) convenience of the parties; (3) location of relevant documents and

the relative ease of access to sources of proof; (4) the locus of the operative facts; (5) the

availability of process to compel the attendance of unwilling witnesses; (6) the relative means of

the parties; (7) the comparative familiarity of each district with the governing law; (8) the weight

accorded to plaintiff's choice of forum; and (9) judicial economy and the interests of justice."

Shariff v. Goord, 03 Civ. 7664 (DAB), 2005 U.S. Dist. LEXIS 18602, *23 (S.D.N.Y. Aug. 26,

2005) (finding transfer appropriate where inmates seeking injunctive relief for alleged disability

discrimination were incarcerated in the Western District of New York and a substantial amount

of the events in question occurred there).

Here, consideration of each of these factors dictates that the Court should transfer to the

Northern District of West Virginia.  First, because the alleged events occurred in the Northern

District of West Virginia, it is likely that all relevant witnesses and documents would be located

there as well.  Second, given the economic constraints on both plaintiff and defendants in this

action, adjudicating this case in the district where the witnesses, parties, and documents are

located is in the interests of justice and judicial economy both in terms of conducting discovery

and eliminating unnecessary travel and expense on the part of the parties, counsel, and other

potential witnesses.  All of these considerations outweigh plaintiff's stated preference to proceed

in the Eastern District of New York.  Thus, if this Court does not dismiss plaintiff's claims

relating to his confinement at FCI Gilmer at this time, it should transfer those claims to the only

17

proper venue for them, the United States District Court for the Northern District of West Virginia.

## <u>CONCLUSION</u>

For the reasons set forth above, defendants respectfully request that this Court dismiss plaintiff's Renewed Complaint in its entirety or, in the alternative, dismiss all of plaintiff's claims relating to his confinement at MDC and transfer the remaining claims concerning his confinement at FCI Gilmer to the United States District Court for the Northern District of West Virginia.

Dated:  Brooklyn, New York
        August 15, 2014

                                    Respectfully submitted,

                                    LORETTA E. LYNCH
                                    United States Attorney
                                    Eastern District of New York
                                    271 Cadman Plaza East
                                    Brooklyn, New York

By:    *Kelly Horan Florio*
                                    KELLY HORAN FLORIO
                                    Assistant United States Attorney
                                    (718) 254-6007
                                    Kelly.horan@usdoj.gov